and others are dismissed after receiving 15 minutes of silence, approval or ignorance. May it please the court, I would like to reserve three minutes of my time for rebuttal. I will be limiting my presentation this morning to the following issues. Whether plaintiffs proved justifiable reliance and or resulting injury, both of which are essential elements of their claims for fraud and inducement and negligent misrepresentation. Second, whether plaintiffs recovery for fraud precludes a recovery for negligent misrepresentation. And third, whether plaintiffs proved violations of the Ohio Deceptive Trade Practices Act. Appellants are not abandoning the other issues raised in their briefs, but for those issues appellants rest on their briefs. Plaintiffs failed to prove the elements of justifiable reliance and resulting injury, both of which are essential elements to their claims for fraudulent inducement and negligent misrepresentation. The issue is not whether the plaintiffs relied on statements. The issue was whether they were justifiable in their reliance. Which statements are we talking about right now in your view? The plaintiffs refer to a whole series of conversations and documents exchanged prior to the execution of those contracts, Your Honor. The contracts themselves have a no reliance provision and therefore any statement prior to the execution of those contracts is subsumed in the no reliance provision. Is that the argument you're making now or are you digressing from your argument? I just wanted to know what statements in your mind were at issue. The statements or representations made regarding the return on investment, qualities of properties, anything that occurred prior to the execution of the contracts. Management, all of that, if it was not incorporated within the express terms of the contract, their reliance by executing a contract with a no reliance provision, stating that we're not relying on anything not expressly set forth in this agreement, is no longer a claim or a statement that they are justifiable in relying on given their representations to the contract. What if your client's agent assured each of the plaintiffs that they didn't need to look at the contract because it was just some standard thing? Does that matter at all? No, it does not matter at all. Why is that? Because each party has a duty to read the contract and they are presumed they cannot willfully be ignorant of the terms of the provisions in the contract. And even if that representation were made, number one, these are standard contracts. They are the contracts used typically by my clients. So such a representation would not have been fraudulent. But you have a duty to read the contract and be responsible for reading the contract. The failure to either read the contract, have it translated into a language that you're familiar with or investigate the terms of the contract, especially when there's boldface indication that you should consult with an attorney before executing the contract, certainly does not allow you to circumvent the other expressed terms of that agreement. The no reliance provisions within the contract do preclude a fraud in the inducement claim. That's their purpose, is to bring to the attention of the parties that if you had a representation that you wanted part of the contract, then it's your duty to bring that into the four corners of the document and have it set forth therein. Secondly, the plaintiffs failed to establish damages as required for both their fraudulent inducement and negligent misrepresentation claims. Under Ohio law, the proper measure of damages of a fraud in the inducement claim dealing with realty is the difference of value of the property as represented versus the actual value at the time of sale. The record is devoid of evidence of what the actual value at the time of sale of any of these properties were. I thought that at least for some, if not most, of the properties, the defendant entities had bought the property themselves shortly before the plaintiffs did here. And so you had a very recent, I guess, market sale before the allegedly fraudulent sale. Why wouldn't that recent purchase be pretty good evidence of the market value? Because it doesn't tell you what an actual value is, especially in this instance where you're looking to- Why not? I mean, it's a market sale. Well, Your Honor, I analogize it to if I go out on Black Friday and I buy a product on a doorbuster sale, and then that same product is being sold later in the day at a higher price. It doesn't mean that that sale to the later buyer is a fraudulent sale. It just means somebody got a better deal than somebody else. Okay, let's say you buy something on a Tuesday in June and then somebody buys it on that Thursday. Wouldn't that be pretty relevant evidence of the market value of that item? No, because under Ohio law, to establish the market value of the item, you must have either expert testimony or an opinion expressed by the owner. In this instance, we had neither. We had no expert opining as to what the actual market value of those properties were, the actual value. And the owners expressed no opinion as to what the value of those properties- The Ohio case says only that kind of evidence is enough to establish value. I mean, maybe in some cases you need that, but what case would you point us to that says in every case, you must have one of those two things? The Ohio cases dealing with realty and establishing the value of real estate are the Worthington City School Board of Education versus Franklin County Board of Revision, 140 Ohio State 2nd, 248, would be my principal authority adopting that position. And if I recall, I think it's roughly paragraph 34 of that opinion. All right, give or take. Give or take, but roughly in that. I had to argue that before the Board of Revision yesterday, so I had that occasion. But you have to consider one of those two. And the Ohio Supreme Court has looked at that and said that establishing the value of the property by requiring expert testimony is outside the common knowledge of the person or the jury. And really has invoked Evidence Rule 702 in that analysis. Well, how do you think the jury came to these numbers? I think the jury came to their numbers, Your Honor, by applying a breach of contract analysis. The representation was in plain to see and point to the fact that they were introduced testimonies to how much they were promised and how much they actually received. If the jury was told that they were promised a 10% return on the investment for the fraud and the inducement claim, they took 10% of the purchase price and awarded each of the plaintiffs that amount, with the exception of Mr. Wong, because only one of his properties was discussed during trial specifically. And that property had a purchase price of $97,510, and he was rewarded damages on the fraud and the inducement claim of $9,710. No, $9,751 for the damages. So I think they did a straight breach of contract analysis. However, damages for fraud and the inducement claim, or fraud claim as a whole, must be different from the breach of contract damages. Plaintiffs did not bring a breach of contract claim, they brought a fraud claim. And for the assessment of those damages, they needed to establish what the value was as represented and what the actual value was at the time. You're making this argument relying on the fact that this is real estate? Yes, and that's what the requirement is for establishing real estate. And Ohio has adopted a restatement of tort second approach in that regard. Plaintiffs also cannot recover on both their fraud and inducement and negligent misrepresentation claims. Where fraud and negligent misrepresentation are claimed as to the same- You make this argument below? Yes, I did, Your Honor. We made the argument that to allow plaintiffs to recover under both claims was a duplication of damages, and we argued that to the court below. I believe we did assert that claim. And what happens here is that the same set of underlying facts, if the fraud is proved, then the negligent misrepresentation is subsumed in the fraud. You either have a willful misrepresentation, i.e. the fraud claim, or a non-willful misrepresentation, the negligent misrepresentation claim. The same representations cannot be both. And by awarding damages under both a fraud theory and a negligent misrepresentation theory, what we have is two recoveries for the same loss, which is impermissible. Thirdly, Your Honors, the plaintiffs did not prove that the appellants violated the Ohio Deceptive Trade Practices Act, and that covers a person who engages in deceptive trade practices when in the course of their business vocation or occupation, the person represents the goods or services of characteristics, benefits, or qualities that they do not have. In this instance, Ohio courts look to court's interpretation under the Lanham Act when considering the Deceptive Trade Practices Act. The provisions of the Deceptive Trade Practices Act, however, do not apply unless we're dealing with a product or service. Here we submit that we're dealing with real estate, so that they're not applicable. Well, I mean, they argue, and I think they argue to the jury, that they were defrauded as to services here. So, I mean, why isn't that something that we should leave alone? Because the services were not provided by the appellants. The services they claim they were defrauded in dealt with the management of the property. They just claim that whatever your client said about services, whether they were going to be provided by you guys or somebody else, that it would make this a no hassle, sort of no work transaction or operation for them. And, I mean, you flushed all this out in front of the jury, and the jury thought that your client did misrepresent the availability of services. So, I mean, it's a services case, as I understand it, to a significant extent. I see that my time is up. May I have leave to answer your question? Sure. It is a services case in the extent it dealt with management services. Those management services were provided by IAP management, an entity who the plaintiff settled with before trial. Is that a related entity to all these IIP and all? It is a related entity. All controlled by Mr. Rahm, as far as I know. No. IAP management was only 50% owned by Assets Unlimited. The other 50% was owned by an outside investor. Okay. But did that company make the representations? Did they? Were they the management company? Did that company have any direct dealings in forming this contract, or were they simply the company that was supposed to be performing on the contract? Again, Your Honor, I know my time's up. May I respond? You can respond. They did have direct dealings in that. They had a separate management contract with that management company. And that management company conveyed information regarding the leasing of the properties, the status of the properties, many of the things, the return on the properties, the collections, many of the things that the plaintiffs have complained of with regard to misrepresentations post-sale, if not all of them, had to deal with the management company. I'm asking a different question. Did these people enter a contract with the management company pursuant to the same process that they entered into it with the defendant? The process was that the agreement with the management company was referred to them, was available to them. They had the ability to either enter into a contract with that management company or with some other entity at their choosing. In this instance, they entered into contracts with the management company for all but one of the properties. All the advertising and the direct communication with the agent, were those done on behalf of the management company? No. They indicated specifically that a third-party management company was available. Okay. Well. I hope I'm addressing your... No, you did. You answered it. All right. Thank you. For these reasons and the reasons stated in our briefs, the opponent's request that the court set aside the district court's judgment in its entirety and enter a judgment for the defendants. Thank you. Thank you. Good morning. Good morning. I'm going to diverge for just a little bit and answer questions that have... Can you keep your voice up too? I will try. Thank you. With respect to the same process question you asked Judge White, the Plaintiff's Trial Exhibit 464, which was a large brochure that went to the plaintiffs, talks about a process, talks about a buying process. That relates to the buying process that was explained in the other documents and that buying process included management. In fact, with respect to management, it is the assignment to management. These people didn't have a choice. They were told as part of the process and they were then... And you look at the internal documents, which the brochure reflects, talks about we will refer you, we will give you a management property. Now Plaintiff's Exhibit 18 especially identifies that management company. It's IIP management. The only exception to that is with close to home in Columbus. And if you look at Plaintiff's Exhibit 23, they're one of their people. They are an association. They're together. This is not a situation where we're dealing only with the sale of property. All of the plaintiffs testified, if we don't have management, heck, we're over in China. We have to have somebody manage the property. And the Plaintiff's Exhibit 464, which is that principal document sent to the plaintiffs, talked about full hands-on management. So management, the services are exactly part of this process. And that's, by the way, why with respect to the Ohio Deceptive Trade Practices Act, that's the key here. That's the service. Who provides it doesn't make any difference. Who got induced into this? The plaintiffs got induced because of a promise of property management. If there's no property management, there's only... But did they represent that they were going to provide the property management? Well, the question is who's they judge? And that gets back to the question of what is this here? This is Assets Unlimited, doing business with other people and trying to hide things. If you look at that Plaintiff's Exhibit 464, every page says Investor Income Properties, LLC. And that document is dated, I think, 6-27 of 2013. There was no such entity as Investor Income Properties, LLC, in 2013. There was an entity called SM Moreland, which in 2014 changed its name to Investor Income Properties, LLC. It's not the same company. It's not that company. What was doing business as Investor Income Properties without the LLC, that time was Assets Unlimited because that was its fictitious name. This is Assets Unlimited trying to con people into believing there are all these other entities. Speaking of which, Assets Unlimited can't sell properties because it's not licensed in Ohio. IIP Ohio couldn't sell properties because it wasn't licensed in Ohio. And until May of 2014, well after it began servicing these properties as managers, IIP Management couldn't do it because it wasn't licensed in Ohio. That's all part of the fraud. That's all part of the inducement. That's all part of the claim. If I can move on, a question was suggested about, well, IIP Management is actually an independent company. No, it's wrong, and it's wrong for the following reason. Assets Unlimited is a 50% owner whose assets are unlimited. It's wrong. There's also Mr. Hossel who testified, and when did Mr. Hossel become the president of the company? After this lawsuit was filed. Rahm ran everything, and there certainly was sufficient evidence, most importantly, for a jury to conclude that. If I can move on. There was a question about the fact that, I mean, Mr. Kruger points out that there's a clause in the contract that says, you know, no reliance. Right. And as I understand the response in your brief, or at least part of it, it's that your clients were assured by Rahm's agent in China that this was some standard contract. Correct. I mean, why isn't that an insufficient reason not to read the contract? Ohio law... People have to read... I mean, if they don't read it, and they should, usually we don't care, and we, you know, apply the contract anyway. And the answer, Judge, is that it's the usually part. The case law that's been cited in both briefs talks about the extensive factors to consider. Now, the jury was only given one, ordinary care. That's what was there. Everybody agreed to that instruction. Let's go back to what the jury's considering. They're relying, the clients were relying on Ms. Wong, excuse me, Ms. Wu. Ms. Wu was relied upon by Mr. Rahm. He let her run the business over in China. Okay, she's the one who suggested, let's take the English version of your marketing and let's make it Chinese. All right. Who else relied on Ms. Wu? Kim Greco of the title company. She relied on Wu so that she could get informed consent regarding the flips. So the jury had Rahm relying on Wu, Greco relying on Wu. They're both English speaking. They're both American. Why is it unreasonable then for the Chinese speaking people who can't read English to rely on Wu? That's a, by the way, that's a. Is there a case that lets us do this sort of free, you know, free form analysis about whether a party has to read a contract? I mean, it's buying a house and I guess if I was arguing the other side, I'd say, you know, your honor, if you're buying a house and you don't, you can't read the language of the contract and the contract, then you have an obligation to go get somebody who can translate it for you. I mean, that's why we have contracts. There's no binding precedent in this circuit. In Ohio, the case law talks about the several factors including age, experience, and other factors. And it talks about it, it identifies certain factors and it says they're among others. So it's really open ended. With respect to that, it's a factual determination here. It's not illegal determination. Mr. Kruger says, yeah, there was. What is the question we're answering with that factual determination exactly? Was there evidence upon which the jury could rely to reach the conclusion that the plaintiff's reasonably relied, excuse me, the plaintiff's justifiably relied on the representations made by Ms. Wu with respect to either this, with respect to either the property or more importantly, the management as well. Because the discussion of the no reliance, that's a general discussion. More specifically to the numbers that the jury gave, if you think about it, if you look at the numbers, what the jury said is we're going to penalize the defendants for fraudulently getting us into this process. Why? By deceptive advertising. That 10%, look at what the advertising said, 10 to 20%. Interestingly enough, Mr. Kruger in his closing actually gave the jury three numbers. He gave a number for each of the plaintiffs. In two of the cases, with respect to Plaintiffs He and Zeng, the jury actually rewarded a little bit less and it gave exactly what Mr. Kruger said with respect to Plaintiff Hung. So you lied to me through these documents to get me into the process and then you misrepresented to me after I agreed. For example, Mr. Ram said, Ms. Wu conveyed Mr. Ram's statement that with respect to Plaintiff Zeng, we had a tenant that wasn't a tenant. Now that has nothing to do with IAP management. That has to do with what Ram said and it has to do with negligent representation. With respect to Plaintiff He, it was, we've got two tenants. We didn't have two tenants. So there's evidence there for the jury to conclude that that's a separate act. That's not the same act. That's a separate act and they found different damages. And that's what... You're talking about the double recovery now? I'm not talking about the double recovery because the double recovery I don't think is before you. But with respect to the negligent misrepresentation, I want to address an issue of procedure. And that is the question was asked, was it raised before? And it was raised in the reply brief in support of the motion for judgment as a matter of law. When the plaintiffs had no chance to respond. Now, we addressed it. We addressed the actions that I'm talking about in the motion for summary judgment. So whether, again, I don't think it's been properly raised. But if it is, you've got two separate actions. Well, okay. So just which one, the fraudulent inducement is for? Getting us into the process. And then the negligent representation is for the misrepresentation. There's a separate representation with respect to particular properties. While they were being managed or before that? Actually, no. In both cases, before they started managing it. Okay. With respect to the market value, the jury had those evidence in their joint exhibits 26 through 32, which are the title company's documents. They show what the, particularly in the flip cases, flip sales, five out of the seven, what the amount paid by either it's IOP Ohio or some other entity. And it's at the same time then being sold to the plaintiffs. I want to go on to another issue. And that is going back to the Ohio Trade Practices Act. The discussion about IOP management being the one, or close to home being the one providing the management, is really irrelevant. Because the act itself talks about persons. And persons being defined, a person who engages in deceptive trade practices. It also includes associations. It's broad. And that's how the plaintiff, that's how the defendants market their material. We will provide this. In fact, on one of the pages, the document says, our business model. It doesn't say just IOP, all this fictitious IOP LLC. It says it's unlimited. And then when you look at their own documents, they talk about other entities. IOP management included. IOP Ohio included. And generically, you have the testimony, I think it's a plaintiff, I may be wrong on the plaintiff. But he said that Ms. Wu talked about our specialized management, excuse me, our specialized property manager. So, you can try to put them under little bitty balls and hide things with cups. But it's the same cup. I want to address the, and go back to the issue of justifiable reliance. They induced it in Chinese, and now they try to exculpate in English. Now, I can't read Chinese. I can see the characters, I don't know what it says. And if you bold it, and you print it as big as this wall, it doesn't convey any meaning to me. And I don't think it conveys any meaning to them when it's in English. But you can't just. No, you're right. But the point of the matter is, there are other evidence that the jury could say, wait a minute. You had the contracts between IOP Ohio and SOFUN. And Mr. Rahm signed those, and those were duly translated. So, you had what? You had a contract between SOFUN, who was the Chinese website that the defendants used to broadcast their messages. The contract between IOP Ohio, one defendant, and SOFUN, which by the way, provided for the advertising for all defendants, was duly translated. You had, and so, the jury has that in mind. So, Mr. Rahm should have, has a translation, translates the inducement into Chinese, and nobody bothers talking to the plaintiffs regarding the agreements. Now, Ms. Greco again says, I relied on Ms. Wu. So, again, the jury has evidence from which it could reasonably conclude that that reliance was justifiable. And that's a factual determination. That's not a legal determination. And if you fraudulently induce somebody to sign a document, the document's gone. It's been fraudulently induced into it. Just because you signed the document doesn't mean that you exclude the fraudulent inducement. If you did, then I can put you under duress. I can hold it around your head and say, sign this. And you sign it, and you waive everything. And now you're stuck with it. That's not the law in Ohio. That's not the law anywhere that I know. When you look at the case law, it talks about... There was no testimony that anybody said that there was no... That it was okay to rely on it. I don't know that... That there's a misrepresentation. And... Did anybody tell these people, the buyers, that there were things in the contract that weren't there? Or that there weren't things in the contract that were there? There's no testimony without that. There is testimony, and I think it's from plaintiff... And my memory is vague on this point. There's testimony from some plaintiff where the plaintiff was asking Ms. Wu, what does this... Tell me what this means. And she says, it's just a standard contract. Sign it. Now, you may say to me, David, you're reasonably intelligent because you've been practicing law. Okay, that's fine. But that's a different fact situation than somebody who's investing hard-earned earnings. She's 41 years old. She's got a child, and she's in China. And by the way, if you look at their marketing stuff, they talk about taking care of global investors. Buyers... They ask people to read contracts before they sign them. It's a pretty modest requirement. It would be if they weren't induced in another manner. Real quick, what's the other manner? I'm sorry? I mean, like, 30 seconds, because your red light's on for my question. I'm sorry, Judge. I may have misunderstood you. You said they were induced in another manner? Well, they were induced through Chinese. Okay. But, I mean, regardless, I mean, before you sign something, it's sort of just common sense that you ought to understand what you're signing, regardless of somebody's assurance. Judge, if you were sitting on the jury, you may have said, sorry, that's not enough. Is there a case... What case would you cite to support the proposition that you can sign something without reading it and just rely on the assurance of the other party, and that's justifiable reliance? There are two cases that are cited in the briefs. One is, I think it's Hurst is the last name. It's cited in our brief. There is a corresponding case, Bender, that's cited in the... It's also cited in the brief that talk about more general principles but don't talk specifically about those issues. So for those reasons, we would ask that you affirm the decision. Thank you. Counsel. Judge White, I'd like to try to address your question in more detail. You asked if the two are tied together. The district court found that they were not. As part of the securities analysis, the district court looked at the fact that the plaintiffs were free to terminate their management agreement at any time and found that it was not a security because there was not a tie in this one circumstance. There was a nonstop service between the purchase of the property and the introduction of the management contracts. The trial judge specifically granted directed verdict on the securities claims, citing that fact, that they were not tied together. Mr. Kovach confuses the idea between a no-reliance clause and an integration clause. Fraud in the inducement claim will get you around the integration clause. It does not get you around the justifiable reliance element in the no-reliance clause. What case says that? There are a couple out of Illinois I believe we've cited. There are no specific Ohio cases, Your Honor, dealing with. Perhaps not as flatly and categorically true as a legal statement as you might want at least. I've not seen an Ohio case dealing with a no-reliance clause. I've tried every means of finding one. Most of the case law dealing with no-reliance clauses comes out of either the Seventh Circuit in Illinois case law or Florida in Florida case law that I've been able to ascertain. Mr. Kovach brought up Plaintiff's Exhibit 464 and the reference to hands-off management. I would ask the Court to look at that. It's appendix record 33, pages 221 and 223, where it specifically references by a third-party management company. So they knew, plaintiffs had every reason to know that the management was coming from an entity different from the selling entity. Unless you were the person making the representation and providing the service, then you do not have a Deceptive Trade Practices Act claim. It is no different than a travel agent telling you that Disney Cruises offers the best service of any cruise line on the ocean. You take a Disney Cruise and you find that their service is disappointing. It isn't the travel agent that provided the service, it was the cruise line. For these reasons and the reasons set forth in our brief, appellants respectfully request that the Court set aside the district court's judgment in its entirety and under judgment as a matter of law in favor of each appellant and on all of plaintiff's claims. Alternatively, remand this case to the district court to act consistent with this Court's ruling or conduct a new trial. Thank you, Your Honors. Thank you, Counsel. The case will be submitted. Clerk may call the next case.